**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| **AMY MURPHY**, on behalf of herself and others similarly situated, | : <br> : <br> : |
| | **CASE NO. 3:23-cv-69** |
| Plaintiff, | : |
| | : **JUDGE THOMAS M. ROSE** |
| v. | : |
| | : **MAGISTRATE JUDGE PETER B.** |
| **KETTING ADVENTIST HEALTHCARE** | : **SILVAIN, JR.** |
| **D/B/A KETTERING HEALTH**, *et al.*, | : |
| | : |
| Defendants. | : |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR**</u>
<u>**COURT-FACILITATED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**</u>

On June 12, 2023, Named Plaintiff Amy Murphy ("Named Plaintiff") filed her Motion for Court-Facilitated Notice to Potential Opt-In Plaintiffs ("Motion"). ECF No. 18. Defendants Kettering Adventist Healthcare d/b/a Kettering Health ("Kettering Health") and Dayton Osteopathic Hospital (collectively "Defendants") filed their Response in Opposition ("Response") on September 5, 2023. ECF No. 32.

Defendants' Response mischaracterizes the Sixth Circuit's recent decision in *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023); contains arguments that are either premature or do not support withholding notice of this lawsuit from the potential opt-in plaintiffs; and relies almost entirely on evidence that should not be considered at the early stages of this FLSA collective action. While Named Plaintiff acknowledges that *Clark* raised the standard for the issuance of notice from modest to a strong likelihood, the Court has reiterated in recent weeks that the analyses district courts are to conduct at this stage remain substantially similar to those conducted under the pre-*Clark* standard. Named Plaintiff need not demonstrate the full merits of her claim, only a strong likelihood that she is similarly situated to the current

and potential opt-in plaintiffs, which she has done.

Therefore, and for the following reasons, the Court should grant Named Plaintiff's Motion.

## I.     LAW & ARGUMENT

### A.     Defendants' Mischaracterization of *Clark* Ignores Recent Decisions from the Court Interpreting the Case.

As a preliminary matter, Defendants suggest in their Response that the Sixth Circuit's decision in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023), completely upends the analyses and procedures for granting notice in FLSA collective actions. Resp., ECF No. 32, at PAGEID #: 262–63. In making this assertion, Defendants rely primarily on two (2) cases from the Northern District of Ohio that dealt primarily with discovery issues post-*Clark*. *Id.* Tellingly, Defendants wholly ignore the decisions from the Southern District of Ohio analyzing *Clark*, discussing its implications on the issuance of notice, and *granting* notice. *See, e.g.*, *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-cv-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023) (Morrison, J.) (discussing *Clark* and granting the plaintiff's request for notice under the new standard); *McElwee v. Bryan Cowdery, Inc.*, No. 2:21-cv-1265, 2023 WL 4423880, at *11–12 (S.D. Ohio July 10, 2023) (Morrison, J.) (discussing *Clark* and denying the defendant's motion for decertification under the new standard). Indeed, even after Defendants filed their Response, the Court has continued to analyze *Clark* and grant notice in other FLSA collective actions. *See, e.g.*, *Cordell v. Sugar Creek Packing Co.*, No. 2:21-cv-00755, 2023 WL 5918753, at *2–3 (S.D. Ohio Sept. 11, 2023) (Marbley, C.J.) (discussing *Clark* and its effect on the notice process); *Hogan v. Cleveland Ave Rest., Inc.*, No. 2:15-cv-2883, 2023 WL 5745439, at *4 (S.D. Ohio Sept. 6, 2023) (Marbley, C.J.) (discussing *Clark* and granting the plaintiff's request for notice under the new standard). These decisions have emphasized several important

aspects of the notice-facilitation process post-*Clark*.

1.     *The Sixth Circuit's* Clark *decision maintains a two-step process for FLSA collective actions.*

The Court has repeatedly noted that the Sixth Circuit "maintained the two-step process for FLSA collective actions." *Hogan*, 2023 WL 5745439, at *4; *McElwee*, 2023 WL 4423880, at *11 ("[T]he Sixth Circuit retained a two-step process for issuing notice and allowing FLSA claims to proceed as a collective action."). This interpretation is consistent with the text of *Clark* itself, which disagreed "that a district court can or should determine–in absentia–whether other employees are 'actually' similarly situated to the original plaintiffs" and with the Sixth Circuit's rejection of the Fifth Circuit's preferred one-step process. *Clark*, 68 F.4th 1003, at 1009–10 (discussing and rejecting adoption of *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021)). The preservation of a two-step process has also been noted by other courts within the Sixth Circuit. *See, e.g.*, *Guy v. Absopure Water Co., LLC*, No. 20-12734, 2023 WL 5953225, at *2 (E.D. Mich. Sept. 12, 2023); *Teran v. Lawn Enforcement, Inc.*, No. 2:22-cv-02338-JTF, 2023 WL 4948009, at *2 (W.D. Tenn. Aug. 1, 2023). *Clark* therefore did not discard the two-step process that district courts have been utilizing for decades.

2.     *Merits arguments and factual disputes are still improper at the first stage.*

The Court has also very recently affirmed that while *Clark* "altered the calculus" of when to grant notice in FLSA collective actions, it did not substantively alter the substance of the analyses or procedures at the first notice stage. *Hogan*, 2023 WL 5745439, at *4, *8 (quoting *Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 733–34 (S.D. Ohio Apr. 6, 2016) (Beckwith, J.)) (stating that at the first stage, "the Court does not consider the merits of the claims, resolve factual disputes, or decide substantive issues"). The Court in *Hogan* rejected several arguments and defenses from the employer-defendant as premature at the notice stage, including whether

the plaintiffs were employees, the appropriate statute of limitations, and attacks on the plaintiffs' sworn testimony. *Id.* at *9–10. The Court specifically noted that these defenses and arguments could be raised at the second stage when defendants challenge if potential plaintiffs are *actually* similarly situated. *Id.*

The Court's finding on this point is consistent with the holding of *Clark*. When making the analogy of the provisional notice determination to granting a preliminary injunction, *Clark* recognized that both are similar in that "the court renders a final decision on the underlying issue (whether employees are 'similarly situated' here, success on the merits there)." *Clark*, 68 F.4th at 1010. Put simply, the Sixth Circuit *distinguishes* the notice determination from a preliminary injunction by noting that only a final decision on the latter considers the plaintiff's success on the merits—meaning that even at the second step of the "similarly situated" inquiry, an FLSA plaintiff's "success on the merits" (i.e., whether an employer is liable) is still not ripe for final adjudication. Both of these aforementioned final decisions occur "only after the record for that issue is fully developed." *Id.* at 1011. The *Clark* Court continues by stating that "[t]he very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims[.]" *Id.* at 1012. Any role that "merits" play in a district court's analysis of the notice determination or even final determination does not concern the merits of the alleged claims, therefore, but rather the "merits" of whether a named plaintiff is similarly situated to the other employees whom they seek to represent.

The Court has reiterated this holding in other post-*Clark* cases. In *Gifford*, for example, the defendants argued that (1) they were not actually the employer(s) of the employees at issue; (2) the declarants did not provide enough detail in their statements, such as the names of other employees to whom they spoke; (3) the statements lacked an evidentiary foundation; (4) their

written policies demonstrated FLSA compliance; (5) there were "different" policies depending on location; and (6) they had missed meal break forms that the employees knew when to complete. No. 2:22-cv-4389, Dkt. No. 59, at PAGEID #: 548, 51–52, 54, 55. In its order granting notice, however, the Court either explicitly rejected these arguments or found it unnecessary to comment on them, reaffirming that these arguments are not proper at this stage. *See Gifford*, 2023 WL 5352509, at *4–5. The *McElwee* Court similarly agrees with this reading of *Clark*,[1] as it cited to the above quoted language and went on to state that the defendants' defense to collective treatment *actually supported* such treatment: "Defendants argue that collective litigation is inefficient because each plaintiff is subject to individualized defenses. But here, Defendants raise the same defense against everyone[.] This defense does not render collective litigation inefficient." *McElwee*, 2023 WL 4423880, at *13 (internal citation omitted). Further, "[j]ust as Plaintiffs can prove their claims through evidence that Defendants acted in conformity with a FLSA violating policy, Defendants can collectively prove their defense." *Id.* The actual merits of a plaintiff's claims are thus not ripe for judgment at the first notice stage—only individualized defenses that could disprove the efficiency of collective treatment. It should be noted that in each of these recent cases, the Court has continued to cite pre-*Clark* case law favorably, indicating that many of those cases are still good law and provide helpful instruction.

Defendants' presentation of *Clark* is inconsistent with the Court's recent interpretations of the same.[2] The Court should weigh Defendants' contentions against its recent decisions in *Hogan*, *Gifford*, and *McElwee* when evaluating Named Plaintiff's Motion.

---

[1] Even more recently, the Eastern District of Michigan in *Guy* relied on the *McElwee* Court's interpretation of *Clark*, quoting directly from the case when laying the foundation for the proper burden to impose at the second stage. 2023 WL 5953225, at *2.

[2] Defendants argue that the Court should be acting as the "factfinder" and engaging in a mini trial at this early stage. *See* Resp., ECF No. 32, at PAGEID #: 269. But *Clark* does not stand for such a radical approach to the *notice* stage, and the Court should not accept Defendants' invitation to conduct such a mini trial.

**B.** **Defendants' Argument that Kettering Health Is Not an Employer of Any Current Plaintiff or the Potential Opt-In Plaintiffs Is Premature and Incorrect.**

Defendants first argue that Kettering Health does not employ any medical providers, including any of the potential opt-in plaintiffs, and therefore must not be included in any notice process. Resp., ECF No. 32, at PAGEID #: 263. Notably, despite this contention, Defendants did not seek to have Kettering Health dismissed as a defendant in either their first or their second motion to dismiss on such basis. *See* ECF Nos. 13, 20. Defendants' argument on this point is both premature at the notice stage and likely incorrect as a matter of fact[3] and law. As noted above, the Court's analysis of similar cases post-*Clark* has affirmed that a two-stage process still exists, that much of the Court's pre-*Clark* jurisprudence remains good law, and that factual disputes, merits, and credibility should be adjudicated at the second stage or beyond.

Federal courts within Ohio have long held that challenges to employer status are better suited for the second stage. *See, e.g.*, *Kuchar v. Saber Healthcare Holdings, LLC*, No. 1:20-cv-02542, 2021 WL 2895527, at *3 (N.D. Ohio July 9, 2021) ("[W]hether Defendants are joint employers is a fact question that goes to Plaintiff's claims' merits. Merits questions are not appropriate at the first . . . stage."); *Weisgarber v. N. Am. Dental Grp.*, No. 4:18CV2860, 2020

---

[3] Indeed, Defendants argue that the "only two medical treatment facilities" relevant to this lawsuit *because* Kettering Health is (allegedly) not an employer are "KH Dayton and KH Washington Township," Resp. ECF No. 32, at PAGEID #: 271 n.4, but they simultaneously provide sworn statements from employees working at several other Kettering Health locations. *See* Decl. of Brooke Bergman, ECF No. 32-2, ¶ 2 (stating that they work at Kettering Medical Center); Decl. of Rachel Caudill, ECF No. 32-3, ¶ (stating that they worked at Soin Medical Center and are currently working at Kettering Medical Center); Decl. of Jennifer Ellison, ECF No. 32-4, ¶ 2 (stating that they work at Soin Medical Center); Decl. of Melinda Hanley, ECF No. 32-5, ¶ 2 (stating that they worked at Kettering Medical Center and currently work at Soin Medical Center); Decl. of Morgan Hawley, ECF No. 32-6, ¶ 2 (stating that they worked at Soin Medical Center and currently work at Kettering Medical Center); Decl. of Kyle Hendrix, ECF No. 32-7, ¶ 2 (stating that they worked at Greene Memorial Hospital and currently work at Kettering Medical Center and Soin Medical Center); Decl. of Jasmine Johnson, ECF No. 32-8, ¶ 2 (stating that they work at Kettering Medical Center); Decl. of Amanda Miller, ECF No. 32-9, ¶ 2 (same); Decl. of Allison Sikora, ECF No. 32-10, ¶ 2 (stating that they worked at Kettering Health Miamisburg and currently work at Kettering Medical Center); Decl. of Rachel Surls, ECF No. 32-11, ¶ 2 (stating that they work at Kettering Medical Center, Soin Medical Center, and "Kettering Health Green [sic] Memorial"); Decl. of Aimee Swallows, ECF No. 32-12, ¶ 2 (stating that they work at Kettering Medical Center and "Soin hospital").

WL 1322843, at *6 (N.D. Ohio Mar. 20, 2020) ("Defendants contend that NADM is not a joint employer of OMs who are directed employed by [] third parties. This claim is more appropriately resolved in the next stage of litigation."); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17cv411, 2019 WL 4743637, at *4 (S.D. Ohio Sept. 29, 2019) (Barrett, J.) (finding it appropriate to "reserve[] consideration of whether the separate employers are joint employers for a final, stage two determination"). Given the Court's recent reiteration that consideration of merits issues is still inappropriate at the first stage post-*Clark*, Defendants' raising of this issue is similarly inappropriate. The Court should reject Defendants' argument as premature with the understanding that Defendant reserves all right to challenge Kettering Health's employer status after the close of discovery—in accordance with longstanding practice.

In addition to being premature, Defendants' argument likely also fails as a matter of law. The Court has recently ruled on similar requests by defendants to be excluded from the FLSA's broad definition of "employer." In *Gifford*, the defendants moved to dismiss on the grounds that the named plaintiff had "offer[ed] no facts that Defendants employed her or any direct care workers." 2023 WL 5352509, at *2. The Court rejected the defendants' argument, noting that the plaintiff's allegation that she had worked for the defendants was "enough." *Id.* Similarly, in *Olin-Marquez v. Arrow Senior Living Management, LLC*, the defendant argued that it was not the actual employer of the putative FLSA collective but was merely a "corporate operations entity." 586 F. Supp. 3d 759, 769 (S.D. Ohio Feb. 17, 2022) (Sargus, J.). Accordingly, the defendant sought to have the case dismissed for lack of jurisdiction. *Id.* at 767. The plaintiff, for her part, alleged that the defendant was her employer and jointly or individually operated and managed individual senior living communities throughout the state. *Id.* at 768. The Court found that these allegations, coupled with those detailing the extent of the control in the complaint, were enough

to defeat the motion to dismiss. *Id.* at 769.

Furthermore, courts frequently allow for several individuals and/or entities to be simultaneously considered employers under the FLSA. *Hutt v. Greenix Pest Control, LLC*, 2:20-cv-1108, 2020 WL 6892013, at *3 (S.D. Ohio Nov. 24, 2020) (Morrison, J.) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991)). Indeed, it is not even a requirement under the FLSA for an entity to "have exclusive control of a corporation's day-to-day functions" as long as there is still "operational control of significant aspects of the corporation's day to day functions." *Id.* (internal quotation marks and further citation omitted).

Accordingly, the Court should reject Defendants' contention that Kettering Health is not an employer of potential opt-in plaintiffs working at Kettering Health's facilities, as such a determination is premature at the notice stage and likely incorrect under the FLSA's broad definition of employer. The Court should further order that notice be issued to healthcare employees at all of Kettering Health's medical centers and outpatient facilities.

### C.  Defendants Offer Several Other Arguments that Are Similarly Premature and Improper and Thus Do Not Defeat Notice.

In addition to their premature request to have the Court rule on Kettering Health's employer status, Defendants also raise several other arguments that are improper and premature at the notice stage. While Named Plaintiff will not highlight every premature argument that Defendants makes in their Response, she will illustratively discuss several.

#### 1.  *Defendants' "happy camper" declarations*

As an initial note, Defendants included twelve (12) declarations from current employees with their Response. *See* Resp., ECF No. 32, at PAGEID #: 258. These declarations form the bulk of Defendants' evidence and are relied upon for many of their substantive arguments. However, this type of declaration is consistently regarded as a "happy camper" declaration at the

notice stage and is not considered for purposes of determining if notice to potential opt-in plaintiffs is appropriate. Defendants' strategy of presenting statements from current employees is neither novel nor innovative. This "happy camper" defense is regularly rejected at the first notice stage. *Abner v. Convergys Corp.*, No. 1:18-CV-442, 2019 WL 1573201, at *5 (S.D. Ohio Apr. 11, 2019) (Black, J.) (further citation omitted); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 892 (S.D. Ohio 2016) (Marbley, J.) (concluding that similar declarations are of little evidentiary value in a meal break case). Defendants notably *cannot* ask the Court to resolve disputes about the facts, merits, or credibility of Named Plaintiff's presented evidence simply to defeat notice. *See Hogan*, 2023 WL 5745439, at *8; *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 WL 1929383, at *8 (S.D. Ohio Apr. 21, 2020) (Sargus, J.) (collecting cases that demonstrate how "happy camper" statements are not accepted at the notice stage).

The Court should once again reject Defendants' proffered "happy camper" declarations and grant Named Plaintiff's Motion.

2.    *Defendants' own evidence supports Named Plaintiff's claim.*

Relying almost exclusively on out-of-Circuit case law, Defendants next mistakenly argue that Named Plaintiff has failed to identify a common unlawful policy or practice. Resp., ECF No. 32, PAGEID #: 264. Defendants are incorrect that Named Plaintiff is merely alleging that an automatic meal break deduction system is unlawful; she acknowledges as much in her Motion. Mot., ECF No. 18, at PAGEID #: 97. Rather, Defendants' meal break deduction policy is unlawful because it enabled managers to override reports of missed meals, an allegation that is supported by the sworn declarations of each of the opt-in plaintiffs and Named Plaintiff. *See id.* at PAGEID #: 90. Furthermore, the declarants all aver that they were discouraged from utilizing Defendants' purported process, which also failed to differentiate between instances where no

meal break was taken and instances where meal breaks were interrupted. *Id.*

Defendants dismissively refer to these sworn statements as presenting "no evidence." Resp., ECF No. 32, at PAGEID #: 266. While already incorrect on its face, Defendants' argument is also rebutted by their *own evidence* submitted with the Response. And although merits issues are best saved for the second stage or beyond, several of the "happy camper" declarations submitted by Defendants contain statements demonstrating that the potential opt-in plaintiffs (in this case, Defendants' declarants) are unfamiliar with the definition of a "bona fide meal period," do not know to report interrupted meal breaks, and do indeed have their meal breaks interrupted. For example, Defendants' declarant Morgan Hawley states that "[o]ccasionally, it does happen that my lunch break is interrupted, but I always end up getting a full 30 minutes. If my break is interrupted after twenty-five minutes, for example, I will take a five-minute break later." Decl. of Morgan Hawley, ECF No. 32-6, at PAGEID #: 313. Three (3) of Defendants' other "happy camper" declarations contain similar statements. *See* Decl. of Melinda Hanley, ECF No. 32-5, at PAGEID #: 308 ("Whenever my lunch break has been interrupted, I will make sure that I take the remainder of the time during the day to finish my break."); Decl. of Amanda Miller, ECF No. 32-9, at PAGEID #: 331 ("I am able to go back and finish the remainder of my lunch break during my shift. I always make sure that I finish my lunch break in the event that it is interrupted."); Decl. of Suzanne Zink, ECF No. 32-13, at PAGEID #: 356 (regarding when her break was interrupted, "I made sure to take the rest of my break later in my shift so that I ultimately took a total of 30-minutes").[4]

These statements show that at least several of the potential opt-in plaintiffs do have

---

[4] Even if it were not already apparent that these declarants did not understand what constitutes a "bona fide meal period" but they still alleged that they were lawfully paid for all hours worked, this argument still cannot negate the proper issuance of notice to the potential opt-in plaintiffs. Indeed, these employees have every right to *not* join the lawsuit if they do not believe that they are owed unpaid overtime compensation, and the Court will separately determine at the second stage who is properly in the case.

interrupted meal breaks and directly conflict with the prompt that Defendants claim was active on the timeclock from 2012 to February 2023. That prompt asked employees if they were "able to receive an uninterrupted lunch" and provided employees with an "I agree" option. Decl. of Peggy Smith, ECF No. 32-1, at PAGEID #: 283. The declarants all state that their meal breaks *were* interrupted, but because they were able to take multiple breaks merely adding up to thirty (30) minutes, they felt as though they had taken a full break. This understanding conflicts with Defendants' timeclock prompt, which only asked employees about an *uninterrupted* meal break.

In addition to their own declarants' statements, Defendants also simultaneously claim that Named Plaintiff's claims are unsuitable for collective treatment while asserting collective-wide defenses. Resp., ECF No. 32, at PAGEID #: 257, 64, 65. These collective-wide defenses showcase why Named Plaintiff, the opt-in plaintiffs, and the potential opt-in plaintiffs are similarly situated and should have their claims adjudicated collectively. *See McElwee*, 2023 WL 4423880, at *13 ("Defendants raise the same defense against everyone . . . . This defense does not render collective litigation inefficient. Just as Plaintiffs can prove their claims through evidence that Defendants acted in conformity with a FLSA violating policy, Defendants can collectively prove their defense.").

Because Defendants' own evidence shows the unlawfulness of their meal break policies and the appropriateness of collective treatment, the Court should grant Named Plaintiff's Motion.

3.  *Defendants improperly seek to hold Named Plaintiff to an identically situated, rather than similarly situated, standard.*

Defendants next argue that because Named Plaintiff, the opt-in plaintiffs, and the potential opt-in plaintiffs may have worked at different facilities with different supervisors on different shifts and in different positions, they cannot be similarly situated and collective treatment will be inappropriate. Resp. ECF No. 32, at PAGEID #: 266–67. But none of these

differences has any dispositive effect on Named Plaintiff's ability to send notice or maintain an FLSA collective. First and foremost, the plain text of the FLSA provides that plaintiffs can pursue collective action litigation against employers on behalf of themselves "and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). Second, even post-*Clark*, the Court has continued to conclude that "[p]laintiffs' burden is merely to 'show only that his position is similar, not identical to the positions held by the putative class members'" *Hogan*, 2023 WL 5745439, at *7 (quoting *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.)); *McElwee*, 2023 WL 4423880, at *12 (further citation omitted). And regarding Defendants' argument that "one plaintiff's alleged meal break experience does not prove anything about the meal break experience of another[,]" Resp., ECF No. 32, at PAGEID #: 266, the Sixth Circuit has already found this exact argument to have no merit:

> The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that employees are similarly situated if they "suffer from a single[ ] FLSA-violating policy," or if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Ford v. Carnegie Mgmt. Servs.*, No. 2:16-CV-18, 2016 WL 2729700, at *2 (S.D. Ohio May 11, 2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009))[.]

*Weaver v. Brown Cnty. Senior Citizens Council*, No. 1:22-CV-70, 2022 WL 2915610, at *2 (S.D. Ohio July 25, 2022) (Black, J.) (alteration in original). Additionally, to the extent that Defendants argue that an alleged difference in damages equates to a defense against *liability*, *see* Resp., ECF No. 32, at PAGEID #: 267, this argument has also already been rejected as applicable at both the notice and second stage. *See, e.g.*, *McElwee*, 2023 WL 4423880, at *12 (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 405 (6th Cir. 2017)) ("If collective litigation would be efficient for liability but not damages, similarly situated plaintiffs should be permitted to proceed to trial

collectively on liability, with damages addressed separately.").

*Clark* itself also explains that the "similarly situated" determination "typically depends on whether [other employees] performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." 68 F.4th at 1010 (further citation omitted). Accepting Defendants' argument would lead to the erroneous conclusion that a plaintiff can only maintain an FLSA collective where the employees all had the same job title, worked for the same supervisor, worked on the same shift(s), *and* worked at the same facility. In other words, the largest collective that could ever exist would include only a very small handful of employees. This lawsuit would consequently be fractured into many smaller lawsuits for employees performing the same tasks and subject to the same payroll and timekeeping policies simply because of the superficial differences that Defendants highlight. "Identically situated" has never been the applicable standard, and Named Plaintiff has demonstrated that she is similarly situated to other hourly healthcare employees who also encountered the unlawful meal break deduction.

This outcome is also supported by the recent decisions from the Court. Named Plaintiff need not be *identically* situated to the opt-in plaintiffs in order to represent the likely hundreds of other employees who experienced the same violation(s) because they were subjected to the same policies. *Gifford*, 2023 WL 5352509, at *3 (further citation omitted) ("A named plaintiff must show that her position is similar to that of opt-ins, but they need not be identical."). *Gifford* simply continues the straightforward pre-*Clark* application that "plaintiffs do not have to be 'identically situated' to be similarly situated." *Monroe*, 860 F.3d at 402; *see Stout v. Remetronix, Inc.*, No. 3:13-CV-026, 2013 WL 4048241, at *3 (S.D. Ohio Aug. 9, 2013) (Rose, J.) ("To join the collective action, the statute only requires that the employees be similarly situated, not

identically situated.").

Because Defendants seek to hold Named Plaintiff to an identically situated standard, their arguments should be rejected, and the Court should grant Named Plaintiff's Motion.

### D. **Defendants' Request for Unnecessary Discovery Should Be Rejected.**

Defendants next argue that, in the alternative, the Court should order a period of discovery on the similarly situated issue. Resp. ECF No. 32, at PAGEID #: 269. Defendants' request is unnecessary, as Named Plaintiff has already presented sufficient evidence of a companywide FLSA-violating policy, justifying the issuance of notice. While *Clark* does empower district courts to authorize discovery on the similarly situated issue, it explicitly states that the district courts retain *discretion* to order pre-notice discovery, not that it is a requirement. *See* 68 F.4th at 1011 (emphasis added) (citing Fed. R. Civ. P. 26(d)(1)) ("[A] district court *may* promptly initiate discovery relevant to the motion [requesting notice].""); *see also Cordell*, 2023 WL 5918753 ("[*Clark*] does not require district courts to permit or order discovery, and certainly not expedited discovery. Rather, it simply re-affirms that district courts have the authority to do so."). Further, numerous courts throughout the Sixth Circuit have allowed and evaluated briefing on the notice issue without discovery. *See Gifford*, No. 2:22-cv-4389, Dkt. No. 67 (S.D. Ohio May 26, 2023) (granting an employer's motion to file a sur-reply to address *Clark* and ordering "no further briefing"); *Gudger v. CareCore Health, LLC*, No. 3:22-cv-239, Dkt. No. 31 (S.D. Ohio June 30, 2023) (setting a supplemental briefing schedule and ordering tolling without additional discovery); *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-cv-210, Dkt. Nos. 47, 52, 57 (M.D. Tenn.) (wherein the parties filed supplemental briefing on motion for notice without additional discovery). Defendants' request for discovery at this early stage is merely another attempt to delay the issuance of notice to the potential opt-in plaintiffs while their

statutes of limitations are still running.

Accordingly, because discovery is unnecessary at this pre-notice stage, the Court should deny Defendants' alternative request and grant Named Plaintiff's Motion.

**E.** **The Court Should Reject Defendants' Alternative Attempt to Limit the Scope of the Proposed Collective.**

Next, Defendants alternatively seek to limit the scope of the proposed collective to only those departments and facilities represented by Named Plaintiff's submitted declarations. Resp. ECF No. 32, at PAGEID #: 270. The Court should reject this attempt to cabin the collective when Named Plaintiff has submitted ample evidence of companywide violations. First, and as previously noted above, the Court should reject Defendants' invitation to rule on the employer status of Kettering Health at this early notice stage. Such a determination is premature and goes against the broad definition of employer found in the FLSA. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).

Second, Named Plaintiff has presented sufficient evidence at this stage to warrant companywide notice. Defendants' argument that Named Plaintiff's submitted declarations are "self-serving" and make "unsupported assertions," based on out-of-Circuit case law, is unavailing. All of the statements submitted in support of Named Plaintiff's Motion aver personal knowledge of the facts therein and come from employees with decades of experience. The Court has previously held that "[b]ecause Plaintiffs' declarations are submitted in support of their FLSA . . . motion, they need not meet all of the evidentiary requirements that exist at summary judgment or trial." *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2020 WL 1129357, at *2 (S.D. Ohio Mar. 9, 2020) (Rose, J.); *see also Hogan*, 2023 WL 5745439, at *9 ("[A]pproval of court-facilitated notice may be appropriate even if a plaintiff's declaration does not explicitly identify members of the putative class."). Further, the Court has frequently authorized the sending of

notice on a companywide basis when presented with less evidence. *Waters*, 2020 WL 1129357, at *1 (granting companywide notice on the basis of two (2) declarations); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at *3 (S.D. Ohio Aug. 15, 2017) (Rice, J.) (granting companywide notice on the basis of one declaration).

Defendants' contention that the proposed collective is unmanageable, also premised on out-of-Circuit case law, is similarly unavailing. Resp. ECF No. 32, at PAGEID #: 271. As noted, Defendants seek to hold Named Plaintiff to an identically situated standard rather than a similarly situated standard; this manageability argument is merely another form of the foregoing. Defendants also seek to claim that the collective is unmanageable while simultaneously asserting collective defenses for everyone related to their reporting policy. Resp., ECF No. 32, at PAGEID #: 265. These contentions conflict with one another and lay bare the frailty of Defendants' argument. *McElwee*, 2023 WL 4423880, at *13.

Accordingly, the Court should reject Defendants' attempts to cabin the scope of the proposed collective and approve Named Plaintiff's Motion.

F. **Defendants' Proposed Edits to the Notice and Notice-Distribution Process Should Be Rejected Except for as Explained Below.**

Defendants propose several unreasonable and unnecessary edits to Named Plaintiff's proposed Notice in an attempt to skew what is supposed to be a <u>neutral</u> communication from the Court. The carefully crafted proposed notice has been submitted in dozens of other FLSA collective actions with similar language and has been approved with (at most) only minor edits. Additionally, the Court should reject Defendants' request to meet and confer on the proposed Notice, Resp., ECF No. 32, at PAGEID #: 272 n.6, as they clearly have already had ample opportunity to address their objections considering the numerous arguments that they asserted in their Response. Their request for a separate conference thus merely seeks to further delay notice.

Each of Defendants' unnecessary edits will be discussed in turn.

### 1. *Including Kettering Health on the Notice*

First, Defendants argue that Kettering Health be removed from the notice in accordance with their premature request for the Court to rule on Kettering Health's employer status. As noted, making that determination is premature at the initial notice stage. Accordingly, removing Kettering Health from the notice is similarly improper and should be denied.

### 2. *Consequences of participating in the case*

Defendants next argue that the Notice should include language informing opt-in plaintiffs that they *may* be required to participate in discovery and/or trial. Named Plaintiffs do not dispute Defendants' request to the extent that the Court is inclined to permit such language.

### 3. *Liability for costs*

Defendants claim that the proposed Notice must notify the potential opt-in plaintiffs that they may be liable for Defendants' costs. Contrary to Defendants' assertion, the modern trend in this District is to deny defendants' requests to include such language because it has the potential to dissuade individuals from joining and can thus chill participation. *Farmer v. LHC Grp., Inc.*, No. 2:20-cv-3838, 2020 WL 7416946, at *7 (S.D. Ohio Dec. 18, 2020) (Graham, J.); *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 WL 1929383, at *10; *Abner v. Convergys Corp.*, No. 1:18-cv-442, 2019 WL 1573201, at *7 (S.D. Ohio Apr. 11, 2019) (Black, J.); *Perry v. Krieger Beard Servs., LLC*, No. 3:17-cv-161, 2018 WL 3218413, at *5 (S.D. Ohio July 2, 2018) (Rose, J.) (quoting *Brandenburg*, 2017 WL 3500411, at *10 (S.D. Ohio Aug. 14, 2017) (Rice, J.)) (denying the defendant's request for costs language because "it could 'improperly dissuade putative collective members from opting into the lawsuit").

The Court should reject Defendant's proposed costs language because it will dissuade

individuals from joining, thereby chilling participation, and is inconsistent with recent case law.

4.    _Right to choose alternative counsel_

Next, Defendants argue that the Notice should include language informing recipients of their right to seek alternative counsel. Named Plaintiff does not dispute Defendants' request to the extent that the Court is inclined to permit such addition.

5.    _Length of the Notice period_

Defendants also object to the length of the notice period. A 90-day notice period allows ample time for recipients to actually receive notice, consider whether or not they want to join, and return their completed forms. The likely result of such a short notice period as Defendants suggest would be that potential opt-in plaintiffs would have to file a secondary, derivative lawsuit against Defendants merely because they did not receive and respond to the notice in the time that Defendants' proposal provides. Conversely, a 90-day notice period allows the Court to "err on the side of inclusivity" to ensure that potential opt-in plaintiffs are not excluded from this lawsuit such that they end up filing another lawsuit. *See Hogan*, 2023 WL 5745439, at *12 ("This Court has repeatedly noted that 90 days is a standard notice period and granted it accordingly."); *Miller v. H.G. Ohio Employee Holding Corp.*, No. 2:21-cv-3978, 2022 WL 2526818, at *9 (S.D. Ohio July 7, 2022) (Sargus, J.); *Crace*, 2021 WL 764072, at *7 (noting that "[c]ourts in this District have found 90 days to be an appropriate notice period on many occasions"); *Waters*, 2020 WL 1129357, at *3.

Defendants' related argument that the notice period should encompass less time because the undersigned "has already been soliciting individuals to join the case[,]" Resp., ECF No. 32, at PAGEID #: 273, should similarly be rejected. A conspicuously-marked advertisement letter does not equate to a court-approved notice, and the FLSA even encourages such communications

to take place prior to such a notice. *See, e.g.*, *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *3 (S.D. Ohio Sept. 25, 2019) (Morrison, J.).

> 6.   <u>*Methods of facilitating the Notice*</u>

Defendants next argue that the Notice should be sent to current employees only by mail and to former employees only by mail and email. This highly outdated argument ignores the longstanding trend in this District to provide notice by at least two (2) methods "to ensure that putative class members receive notice of the pending action." *Headspeth v. TPUSA, Inc.*, No. 2:19-cv-2062, 2020 WL 4577491, at *2 (S.D. Ohio July 23, 2020) (Morrison, J.) (quoting *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899–900 (S.D. Ohio 2018) (Sargus, J.)). Providing notice by two (2) methods, such as mail and email, comports with the remedial purpose of the FLSA and numerous decisions from the Court. Named Plaintiff's request to send notice by mail and text message to individuals without a provided email or mailing address further comports with the longstanding trend of facilitation by two (2) forms of notice and should also be approved. *See Pyfrom v. ContactUS, LLC.*, No. 2:21-cv-4293, 2022 WL 11624210, at *1 (S.D. Ohio Oct. 18, 2022) (Sargus, J.).

> 7.   <u>*The 14-day deadline to provide the potential opt-in plaintiffs' contact information is reasonable.*</u>

Defendants' final objection to the proposed notice takes issue with Named Plaintiff's request that they provide the Roster within fourteen (14) days of the Court's order. This timeframe is reasonable for Defendants to provide the requested information because those records are already within Defendants' possession—in other words, Defendants have no obligation to wait until the granting of notice to compile the requested information for the Roster. Additionally, a 14-day deadline to provide this information is in line with numerous decisions from the Court. *See, e.g.*, *Carr v. Austin Powder Co.*, No. 2:21-cv-5140, 2022 WL 11620949, at

*7 (S.D. Ohio Sept. 30, 2022) (Sargus, J.) (requiring the information within fourteen (14) days); *Jones v. Converse Elec., Inc.*, No. 2:21-cv-1830, 2021 WL 5027411, at *7 (S.D. Ohio Oct. 29, 2021) (Morrison, J.) (same); *Waters*, 2020 WL 1129357, at *3 (same); *Brandenburg*, 2017 WL 3500411, at *10 (requiring the information within fifteen (15) days). Defendants' conduct again demonstrates their desire to delay notice and should be firmly rejected.

Therefore, the Court should reject Defendants' final notice argument and find that a 14-day window is reasonable and aligns with the Court's precedent.

### G. **The Court Should Reject Defendants' Unsupported Request for Oral Argument.**

Lastly, Defendants make a request in the caption of their Response for oral argument. Resp., ECF No. 32, at PAGEID #: 249. The Court should reject Defendants' request on its face because oral argument is unnecessary to decide the issues in Named Plaintiff's Motion. Additionally, Defendants make no mention of this request in the remainder of their Response, in direct violation of the Court's Local Rule, which states that "the ground(s) for any such request [for oral argument] shall be succinctly explained. Loc. R. 7.1(b)(2). Accordingly, the Court can and should deny Defendants' request on this basis alone. *See Presidio, Inc. v. People Driven Tech., Inc.*, No. 2:21-cv-5779, 2022 WL 15665940, at *1 n.2 (S.D. Ohio Oct. 28, 2022) (Deavers, M.J.) ("Defendants did not expand on their request for oral argument, and accordingly have not demonstrated that this matter rises to a level of complexity necessary to justify oral argument.").

## II. CONCLUSION

For the reasons addressed above and in her Motion, Named Plaintiff respectfully request that the Court grant her Motion, subject only to her modifications herein, and authorize notice.

Respectfully submitted,

**COFFMAN LEGAL, LLC**
*/s/* Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (0100041)
Tristan T. Akers (0102298)
1550 Old Henderson Road
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
        agedling@mcoffmanlegal.com
        khendren@mcoffmanlegal.com
        takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September 2023, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/* Matthew J.P. Coffman
Matthew J.P. Coffman